## HUMANE STANCHION WORKS v. MITCHELL MFG. CO.

Circuit Court of Appeals, Seventh Circuit.
December 5, 1927.

Rehearing Denied January 19, 1928.

No. 3952.

1. **Patents ⚙➝328—1,215,569, for guard for cow stalls, held valid.**

Mitchell patent, No. 1,215,569, February 13, 1917, for guard for cow stalls, *held* valid, as combination of elements producing useful result, over prior devices.

2. **Patents ⚙➝328—1,215,569, claims 6 to 10, for guard for cow stalls, should be limited to guards pivotally attached to cross-bars, which, intermediate their ends, are pivoted to standard, enabling parallelogram formed to be collapsed.**

Claims 6 to 10, inclusive, patent No. 1,215,569, to Mitchell, February 13, 1917, for guard for cow stalls, should be limited to guards pivotally attached to cross-bars, which, intermediate their ends, are pivoted to standard, thus enabling parallelogram thus formed to be collapsed to bring the two guards into and out of guarding position.

3. **Patents ⚙➝118—Patent held not invalid for alleged violation by primary examiner of Patent Office rule respecting binding effect of recommendation of examiner in chief (Patent Office rule 139).**

Patent No. 1,215,569, to Mitchell, February 13, 1917, for guard for cow stalls, *held* not invalid because of alleged transgression of Patent Office rule 139, where primary examiner allowed certain claims and disallowed others, and examiners in chief who affirmed decision of primary examiner in rejecting claims stated in decision that many claims allowed were not substantially different from those under rejection and recommended that examiner revise claims, and in accordance with their recommendation, primary examiner reconsidered allowed claims and rejected certain claims, since decision of examiners in chief did not amount to rejection of all claims, requiring a showing of new facts.

Appeal from the District Court of the United States for the Western District of Wisconsin.

Patent infringement suit between the Humane Stanchion Works and the Mitchell Manufacturing Company. From the decree, the Humane Stanchion Works appeals. Affirmed, with claims limited.

Frank E. Dennett, of Milwaukee, Wis., for appellant.

Arthur L. Morsell and Curtis B. Morsell, both of Milwaukee, Wis., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. Appellant complains of a decree finding its infringement of United States patent to Mitchell, No. 1,215,569, February 13, 1917, for a guard for cow stalls. Following Fig. 1 of the patent drawings shows the invention:

*10* is the upright standard between stalls. *11* shows one member of the stanchion in which the cow inserts her head, the opposite member of the stanchion being shown open, resting against *10*. The guard of the patent resides in the vertical rods, *14*, which, when the stanchion is open, are in the position shown to prevent the cow from putting its head in the spaces between the standard and the member of the stanchion, or from walking through the open stanchion, as shown. When the cow is in place and the stanchion closed, the guards are brought out of the way and next to the standard by moving the members, *13*, which are pivoted to the standard at *16* and to the guards at *18* and *19*, causing one of the guards to move downward and the other upward, taking them out of the way to enable the cow to turn its head sideways and backwards without meeting this obstruction.

Invalidity of the patent is claimed mainly upon United States patent to James, No. 1,002,275, September 5, 1911; to Simons, No. 679,431, 1901; and to Ball, No. 46,985, 1865. Simons recognizes the need of such a guard and secures it by attaching rigidly to the outside of each stanchion member a rod to serve as a guard between the stanchion and the standard. This construction is open for general use, but is claimed to be objectionable, in that it cannot be withdrawn when the cow is in position and the stanchion closed, but remains permanently, and more or less an obstruction to the free movement of the head. No other contrivance appears until the James application in 1910. His device shows a single guard in each stall, between the standard and the fixed member of the stanchion. This guard is pivotally attached below to the stall floor and above to the frame or rod connecting the division standards, so that when the

stanchion is open to receive the head, the guard is swung around to stand in the space between the standard and the upright member of the stanchion. When the stanchion is closed, the guard is then swung back to stand out of the way against the standard. To prevent the cow passing through between the open stanchion, there is shown a chain between the two at about the middle, and to prevent its disturbing the stanchion member which, when opened, rests against the standard stanchion member, there is a chain connection to the standard to hold it there until the stanchion is ready to be closed.

James' device no doubt served the purpose of guarding the one opening into which it was swung, and it might involve no patentable invention over James to provide another such guard for the space on the other side of the stanchion, although this would mean a double mechanism, in each of which there is a bolting to the floor and to the cross-bar between the tops of the standards. Ball is shown to indicate want of novelty in a collapsible gate. This shows a gate collapsible as it is raised, and with a counterweight to help raise it.

[1] It might be said that if, instead of pivoting James' guard member to the floor and the top member, to swing it into and out of position, it were pivoted to the standard to raise or lower it into and out of guard position, this would not indicate patentable advance over James. But Mitchell went further. He pivoted both guards to bars *13*, which he pivotally attached to the standard at *16*, and in these further particulars did something that does not seem to have been conceived before. There is evidence that this produced some useful result over the prior devices, and we are of opinion that it shows such a combination of elements, however old, as is in this art entitled to recognition and to such reward as should come to those who, by the exercise of the inventive faculty, first combine various old elements and bring about an improved result.

[2] Some of the claims, notably 6 to 10, inclusive, seem to us to be somewhat broader than the invention discloses, in that they might be construed to cover any combination whereby through any means movable guards are introduced on both sides of the stanchion. Such claims should be limited to guards pivotally attached to cross-bars which, intermediate their ends, are pivoted to the standard, thus enabling the parallelogram thus formed to be collapsed to bring the two guards into and out of the guarding position as shown.

The contention of a prior use by Grubb is not warranted by the evidence, which wholly fails to establish such use with the definiteness that the law requires.

[3] It is urgently contended for appellant that the patent has no validity, because of alleged transgression of Patent Office rule 139. It seems that the primary examiner allowed certain claims and disallowed others, and that from the disallowance an appeal was taken to the examiners in chief, who affirmed the decision of the primary examiner in rejecting the claims, stating in their decision: "We note that many of the claims already allowed are not substantially different from those under rejection, and recommend that the examiner revise these claims in view of our decision." An unsigned pencil note upon the decision is: "Exr. note and carefully reconsider allowed cls. to rej. those not allowable."

Rule 139 prescribes that if the examiners in chief discover grounds, not involved in the appeal, for granting or refusing letters patent, they shall annex a statement to that effect with such recommendation as they deem proper, and that in case they recommend refusal of letters patent in the form claimed, their recommendation will stand as a rejection "and will reopen the case for amendment or showing of fact, or both, before the primary examiner, responsive to that rejection. The recommendation of the examiners in chief is binding upon the primary examiner unless an amendment or showing of facts not previously of record be made which, in the opinion of the primary examiner, overcomes the recommendation."

The contention is that the decision of the examiners in chief amounts to a rejection of all the claims, and that since no amendment was made or showing of facts not previously of record, the primary examiner was wholly without power to grant letters patent, which are therefore void. Following the report of the examiners in chief, it is stated in the file wrapper: "In accordance with the recommendation of the Board of Examiners in Chief, the allowed claims have been reconsidered, and claims 11 and 18 are rejected as follows," and the other claims were ordered to "stand allowed." Subsequently, some of the claims thus ordered to stand allowed were canceled, and the numerals of those remaining changed, and the claims of the patent allowed.

Without considering whether transgression of the rule would alone affect the validity of a subsequently granted patent, we are of opinion that no such transgression here appears. The decision of the examiners in chief was not that all of the claims were im-

properly allowed, but that many of the claims did not differ substantially from those under rejection, and their direction to the primary examiner still left him with discretion to allow even such claims, for their recommendation was that the claims be revised, and the pencil note was that he carefully reconsider the claims. The record shows that he did reconsider them, and disallowed certain ones of them, which he evidently regarded as complying with the recommendation of the examiners in chief. Upon such a record it would be a far cry to find invalidity of the patent.

With the claims limited as above indicated, the decree of the District Court is affirmed.